STEPHANIE L. QUINN (SBN 216655)
RAYMOND TUASON (SBN 279346)
**MURPHY, CAMPBELL, ALLISTON & QUINN**
8801 Folsom Boulevard, Suite 230
Sacramento, CA 95826

Telephone: (916) 400-2300
Fax: (916) 400-2311
squinn@murphycampbell.com

Attorneys for Defendant
NATIONAL RAILROAD PASSENGER
CORPORATION, dba AMTRAK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| LINDA KESSLER,<br><br>  Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, doing business as AMTRAK, and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No. 2:15-CV-00728-JAM-AC<br><br>**ORDER ON DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION, DBA AMTRAK'S, MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:   June 28, 2016<br>TIME:   1:30 p.m.<br>CTROOM: 6<br><br>TRIAL DATE: September 19, 2016 |

This matter came on regularly for hearing on June 28, 2016 in front of the Honorable John A. Mendez, District Court Judge for the United States District Court for the Eastern District of California.  Brian W. Plummer of Wilcoxen Callaham appeared on behalf of Plaintiff LINDA KESSLER.  Stephanie L. Quinn of Murphy, Campbell, Alliston & Quinn appeared on behalf of Defendant NATIONAL RAILROAD PASSENGER CORPORATION, DBA AMTRAK. ("Amtrak").  After considering the papers and records on file, oral argument having been presented, the Court rules as follows:

There are four different theories with respect to negligence in this case. Plaintiff has raised a number of arguments in opposition to Defendant's motion. Plaintiff has argued that Amtrak is overstating Plaintiff's evidentiary burden in this Federal Employers' Liability Act, 45 U.S.C. section 51 et seq. (FELA) case and that Plaintiff is required to show only that her

version of events is possible. Plaintiff has argued that under the correct standard, she has provided sufficient evidence in support of each of her theories of liability to create a genuine issue of material fact. Plaintiff has alleged that Amtrak destroyed evidence that would have supported Plaintiff's case, and, therefore, Plaintiff is entitled to a presumption that summary judgment is inappropriate. Finally, plaintiff has argued that she has provided sufficient evidence to show that Amtrak's negligence was the cause of her injuries.

FELA does permit recovery for personal injuries to employees of a railroad engaged in interstate commerce if such injuries result in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

To recover on a FELA claim, the plaintiff must establish: (1) that the railroad was negligent under FELA; and (2) causation. With respect to demonstrating causation under FELA, the quantum of evidence sufficient to present the jury question of causation is less than it is in a common law tort action; however, this does not mean that FELA plaintiffs need to make no showing of causation. FELA plaintiffs still must demonstrate some causal connection between the defendant's negligence and their injuries. This lower standard in FELA cases does not mean that courts must allow expert testimony in other contexts that would be inadmissible.

Plaintiff has argued that she is not required to provide expert testimony regarding causation. That is in the opposition at page 8, citing *Lavender v. Kurn*, 327 U.S. 645 (1946) for the proposition that the exacting scientific analysis that Amtrak seeks to impose on plaintiff is inappropriate. Amtrak has argued that *Lavender* is inapplicable in this case because there was actual evidence in *Lavender*, including testimony about the cause of the injury, evidence of the cause of injury, and evidence supporting the theory of the injury.

The Ninth Circuit has distinguished cases like *Lavender*, which involved a situation in which no special expertise was necessary to draw a causal inference from cases in which expert testimony is necessary to establish even that small quantum of causation required by

FELA. There is a Ninth Circuit case, *Claar v. Burlington N. R.R. Co.,* 29 F.3d 499, 503 (9th Cir.1994), in which the court reasoned that in the latter category of cases, the failure to proffer any admissible expert testimony merits summary judgment.

Several cases have emphasized that at least some expert testimony should be supplied by the plaintiff in order to survive a summary judgment motion. The Ninth Circuit concluded that FELA plaintiffs generally must provide admissible expert testimony showing that the workplace harm they allege played some part in producing their injuries. *Schrum v. Burlington Northern & Santa Fe Ry. Co.*, 286 Fed.Appx 380 (9th Cir. 2008). In *Schrum*, the court did uphold summary judgment because a review of the evidence presented on summary judgment revealed that no doctor was willing to testify that Schrum's inhaling of dust at Chemical Lime was a cause of his aggravated asthma.

The plaintiff in *Schrum*, unlike the plaintiff in this case before the court today, actually retained an expert, but the court found that the expert was not a physician and did not offer evidence as to Mr. Schrum's specific condition. Instead, the court emphasized that the defendant had submitted expert testimony concluding that Schrum's asthma was not caused by his occupation, and summary judgment was thus appropriate in Schrum because the plaintiff failed to present expert evidence establishing causation.

In another FELA negligence claim, the Ninth Circuit upheld summary judgment after the district court had concluded that the plaintiff's expert reports were deficient because they failed to explain which chemicals caused plaintiff's injuries and failed to provide the reasoning and methods used to support their conclusions. *Claar v. Burlington N. R.R. Co.,* 29 F.3d 499, 503 (9th Cir.1994). Without any admissible expert affidavits, plaintiff could not demonstrate a causal relationship between chemical exposure and their injuries.

Even the *Lavender* court stated that only when there is a complete absence of probative facts to support its conclusion reached does a reversible error appear, but whereas here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whichever facts are inconsistent with its conclusion. In summary, the courts in

- 3 -
ORDER ON DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION, DBA AMTRAK'S, MOTION FOR SUMMARY JUDGMENT

*Claar* and *Schrum* did grant summary judgment even though the plaintiffs attempted to submit expert testimony about causation.

In *New York Central Railroad Co. v. Ambrose Administratrix*, 280 U.S. 486, 490, 50 S.Ct. 198 (1930), the Supreme Court found that it was not enough that an accident may have resulted from one of several causes, that the only evidence that plaintiff provided was conjecture and speculation. The Supreme Court in *Lavender* found that there was evidence, enough for the jury to decide factual issues, which distinguishes *Lavender* from cases that have a complete absence of probative facts.

Thus, the court concludes that the plaintiff does have a burden on summary judgment to provide at least some expert testimony in support of her negligence and causation claims, and there is a complete failure of the plaintiff to provided admissible expert testimony to explain how Amtrak's alleged negligence caused her injury. Instead, Ms. Kessler relies solely on her own self-serving and somewhat speculative and occasionally contradictory deposition testimony, and for those reasons, the court grants summary judgment in favor of Amtrak.

The negligence theories that Plaintiff has raised are (1) that there was an employee on the baggage car that was negligent and lost control of the box, (2) that Amtrak was negligent because there was an insufficient number of personnel at the Davis Station to help load the box, (3) that Amtrak was negligent for not providing a different jitney for her to use, and (4) that Amtrak was negligent because the train should have come in on the track closest to the station. Amtrak has submitted sufficient evidence to dispel all those theories and Plaintiff has failed to provide any evidence that would create, in the court's view, a genuine issue of material fact on those four theories.

On the spoliation argument, the court finds no merit to the claim that Amtrak has destroyed relevant evidence that the plaintiff would have used to support her negligence and causation claims, including prior complaints about the Davis Station allegedly made by John Murphy and Ms. Kessler, evidence used by Amtrak's investigator, and surveillance video of the incident. Ms. Kessler has argued that this court should apply the doctrine of

spoliation and draw an inference that Amtrak has destroyed evidence and it was done so to impede Plaintiff's investigation. Ms. Kessler has argued that spoliation itself provides a basis for denying summary judgment, and Plaintiff also argues that the court need not conclude that spoliation occurred, but only that a jury might conclude that it occurred.

Amtrak has opposed this argument. Amtrak has pointed out that Plaintiff has failed to point to any actual evidence that she requested in discovery that was not provided to her and that Plaintiff never sent any discovery request for documents that she claims were destroyed, and Amtrak argues that Plaintiff cannot show that the records were destroyed, let alone meet the spoliation three-part test.

Spoliation of evidence is a destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or future litigation. As Amtrak has argued, spoliation only provides a basis for denying summary judgment where there is sufficient probative evidence for a jury to find an act of spoliation and to draw the inference derived from such an act.

Plaintiff cites a Second Circuit case, *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998). Defendant has pointed out that even the Second Circuit case cited by Plaintiff for her argument that the court only needs to conclude that a jury *could* conclude that spoliation occurred, that the evidence had already demonstrated that the documents had been destroyed. The court permitted the issue of whether the actual destruction that had occurred had occurred in bad faith. That is the issue that went to the jury.

Amtrak has argued the test for spoliation involves three parts, including that the records were destroyed with a culpable state of mind. Bad faith destruction is not required for a court to order the jury or make an adverse inference. The trial court also has the broad discretionary power to permit the jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior. A finding of bad faith is not a prerequisite to this corrective procedure, but, surely, a finding of bad faith would suffice and so would simple notice of potential relevance to the litigation.

Here, the court concludes that Plaintiff has not provided sufficient evidence of spoliation. Plaintiff argues that two important pieces of evidence were destroyed, prior complaints from Mr. Murphy and Ms. Kessler and evidence used by Amtrak investigator Robert Newman. Plaintiff has argued that Murphy's and Kessler's complaints would demonstrate that Amtrak had notice of the dangerous condition of loading luggage onto a train in Platform Two. Plaintiff argues that the Newman records would have shown which track the train was on the day of the incident.

In Plaintiff's undisputed material facts, the plaintiff has cited to the deposition of former station managers Mary Gulley and Robert Newman for her proposition that the complaints file was destroyed. Amtrak has argued that the deposition testimony cited by Plaintiff does not establish that the records were destroyed. Gulley's testimony is that she reached out to Newman in preparation for her deposition in this case and asked if he still had a safety complaint file that Gulley had when she was working at the station. Newman apparently told Gulley that the file could be in his office, but he did not know because he had cleaned out some things when he was station manager and Newman no longer worked there. This story was confirmed by Newman who testified similarly that he spoke to Gulley prior to his deposition. Mr. Newman then told her he did not remember if the file still existed because he was no longer a manager. Newman does testify that Murphy's complaints were sent to Gulley and that Gulley maintained a file of complaints, but Newman could not recall what happened to the files and he stated, "I think it had been thrown out", at his deposition. Mr. Newman's testimony is speculative. "I think it had been thrown out" is not an affirmative "I know it was destroyed" or even an inference that it was destroyed. Mr. Newman could not even confirm whether the file had been thrown out because he was no longer working as a manager for Amtrak.

Plaintiff never even sought the information in discovery, and the last thing Murphy testified is that he had saved his own written complaints that he had made to Amtrak and that he still possessed them at home, so the evidence before the court does demonstrate that the complaints may still exist. That is Mr. Murphy's testimony that he has files at home.

Plaintiff has failed to apparently request them from Mr. Murphy or request them in discovery, and Plaintiff is now attempting to make up for this failure by arguing that Amtrak destroyed the evidence. The evidence does not support that argument, and the court finds the spoliation claim to be without merit.

As to Mr. Newman's investigation, there is no evidence that Mr. Newman concluded or should have concluded which track the train entered on, and the testimony, again, that plaintiff has cited for her arguments on this point do not support the conclusion that Amtrak destroyed evidence or failed to preserve relevant evidence. Newman explained his methodology for the investigation, including his failed attempt to interview plaintiff. Newman also testified that he did not conclude what track the train came in on, though he possibly could have investigated the issue further, and Newman testified that he did not determine if there was any security camera footage. It is unclear how, and Plaintiff does not argue how, this testimony she cites supports the spoliation claim, and, again, as such, the court concludes that Plaintiff has failed to demonstrate spoliation.

Then, finally, on the plaintiff linking medical problems to the fall that Ms. Kessler alleges that she suffered, there is, a lack of expert testimony on behalf of the plaintiff as submitted by the plaintiff. That is necessary to establish even that small quantum of causation required by FELA.

Dr. Siemens never opined to a reasonable degree of medical probability that Plaintiff suffered a low back injury as a result of the subject incident. Plaintiff has failed to argue how Dr. Siemens qualifies as a causation expert and fails to discuss how Dr. Siemens reached the alleged conclusion that Plaintiff's injury was caused by the fall. Siemens' deposition testimony simply reports what Plaintiff told her and what Siemens diagnosed plaintiff with. Siemens never explicitly provides an opinion on what caused plaintiff's injuries and never explicitly described a scientifically valid methodology that would justify such an opinion. Siemens explicitly states that she has never made an assessment as to the cause of Ms. Kessler's spine injury. She explicitly says she has not given any opinions and has not been asked to give any opinion about causation, and, thus, the court concludes that Dr. Siemens

is not an expert on causation and has not provided the required expert testimony regarding causation.

Dr. Klein is the defense expert on causation and he has concluded and raised the issue and specifically testified that there is nothing in the medical records showing any objective evidence that Ms. Kessler fell on August 2nd, 2012, and that he disputes and argues in favor of Defendant's arguments regarding causation in this case.

Since there is no qualified expert that has specifically opined that all of Plaintiff's alleged injuries were caused by the incident on August 2nd, 2012, the court grants summary judgment on this ground as well that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether her injuries were caused by the August 2nd, 2012 incident.

For all these reasons, the court grants summary judgment in favor of Amtrak on this complaint.

IT IS HEREBY ORDERED that judgment be entered in favor of Amtrak.

IT IS SO ORDERED.

DATED: July 6, 2016                     /s/ John A. Mendez
                                        JOHN A. MENDEZ
                                        United States District Court Judge